UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONNA ANN GABRIELE CHECHELE

                              Plaintiff,

               - against -

MORGAN STANLEY, and MS
SUBSIDIARIES 1 THROUGH 10.

                              Defendants
               - and -

GRAMERCY CAPITAL CORP.,

                    Nominal Defendant.

**MEMORANDUM
OPINION & ORDER**

11 Civ. 4037 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

             Plaintiff Donna Ann Gabriele Chechele brings this suit against Morgan Stanley

("Morgan Stanley") and Morgan Stanley Subsidiaries 1 through 10 ("MS Subsidiaries")

(collectively, "MS Defendants"), and nominal Defendant Gramercy Capital Corp. ("Gramercy"),

seeking to recover short-swing profits pursuant to Section 16(b) of the Securities Exchange Act

of 1934 (the "Exchange Act"), 15 U.S.C. § 78p(b).  The MS Defendants have moved to dismiss

the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons

stated below, the MS Defendants' motion will be granted.

## BACKGROUND

### I.      STATUTORY BACKGROUND

             "Under § 16(b) of the Exchange Act . . . a corporation or security holder of that

corporation may bring suit against the officers, directors, and certain beneficial owners of the

corporation who realize any profits from the purchase and sale, or sale and purchase, of the

corporation's securities within any 6–month period."[1]   Credit Suisse Securities (USA) LLC v. Simmonds,132 S.Ct. 1414, 1417 (2012).  "Short-swing trading is generally defined as 'the purchase and sale (or vice versa) of a company's stock within a six-month period by persons deemed to be 'insiders'. . . .'"  Chechele v. Scheetz, 819 F. Supp. 2d 342, 344 (S.D.N.Y. 2011) (quoting Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001)).  "The statute imposes a form of strict liability and requires insiders to disgorge these 'short-swing' profits even if they did not trade on inside information or intend to profit on the basis of such information."  Simmonds, 132 S.Ct. at 1417 (citing Gollust v. Mendell, 501 U.S. 115, 122 (1991)).  Section 16(b) provides that suits must be brought within "two years after the date such profit was realized."  15 U.S.C. § 78p(b).

Although the Exchange Act does not define "beneficial owners," SEC regulations create a "two-tiered analysis of beneficial ownership":

> SEC Rule 16a–1(a)(1) provides that "[s]olely for purposes of determining whether a person is a beneficial owner of more than ten percent of any class of equity securities," the term "beneficial owner" means . . . "any person who is deemed a beneficial owner pursuant to section 13(d) of the Act and the rules thereunder."  17 C.F.R. § 240.16a–1(a)(1).  The borrowed definition from SEC Rule 13d–5(b)(1), promulgated under Section 13(d), provides, in relevant part:
>
>> [W]hen two or more persons agree to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer, the group formed

---

[1] Section 16(b) provides, in relevant part:

For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, . . . shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security or security-based swap agreement purchased or of not repurchasing the security or security-based swap agreement sold for a period exceeding six months.

> thereby shall be deemed to have acquired beneficial ownership . . . of all equity securities of that issuer beneficially owned by any such persons.

17 C.F.R. § 240.13d–5(b)(1) (emphasis added).  Accordingly, under Section 13(d) and the corresponding regulations, "if two or more entities agree to act together for any of the listed purposes, a 'group' is 'thereby' formed." Roth v. Jennings, 489 F.3d 499, 507-08 (2d Cir. 2007).

Scheetz, 819 F. Supp. 2d at 346 (quoting Morales, 249 F.3d at 122).

## II.   THE COMPLAINT

Chechele is a New Jersey resident and a stockholder in nominal Defendant Gramercy, a Maryland corporation with its principal offices in New York, New York.  (Cmplt. ¶¶ 3-4)  At all relevant times, the common stock of Gramercy was registered pursuant to Section 12 of the Exchange Act.  (Id. ¶ 10)

Defendant Morgan Stanley, a multinational bank holding company that provides financial services, is a Delaware corporation with its principal offices in New York, New York. (Id. ¶¶ 5, 13)  Defendant MS Subsidiaries 1 through 10 are "direct or indirect subsidiar[ies] of Morgan Stanley that engaged in short-swing transactions in [Gramercy's] common stock."  (Id. ¶ 6)  The Complaint further alleges that SSF III Gemini, LP ("Gemini") "is an indirect subsidiary of Morgan Stanley formed for the purpose of acquiring shares of [Gramercy's] common stock." (Id. ¶ 8)  Both the MS Subsidiaries and Gemini are "managed by Morgan Stanley employees and under Morgan Stanley's control," and Morgan Stanley has the "sole or shared power to vote and dispose of securities owned by Gemini or any MS Subsidiary and is thus deemed to beneficially own such securities for purposes of Sections 13(d) and 16" of the Exchange Act.  (Id. ¶ 15)

In connection with the formation of the MS Subsidiaries and Gemini, "Morgan Stanley entered into one or more agreements with Gemini and such MS Subsidiary." (Id. ¶ 16) The agreements – "which included management agreements, support agreements, stockholders

agreements, partnership agreements, limited liability company agreements, or similar agreements" – served to "coordinate decisionmaking among Morgan Stanley, Gemini, and the MS Subsidiaries with respect to the acquisition, holding, voting, or disposition of issuer securities," including shares of Gramercy's common stock.  (Id.)

Chechele further alleges that although "Morgan Stanley maintains information barriers" to "prevent the flow of information among certain of its affiliates," these barriers

> were not in place among Morgan Stanley, Gemini, and the MS Subsidiaries. Instead, employees of Morgan Stanley shared information and coordinated voting and other investment decisions with respect to shares of [Gramercy's] common stock held by Morgan Stanley, Gemini, and the MS Subsidiaries.

(Id. ¶ 17)

As a result of these "arrangements, understandings, and agreements," "a stockholder 'group' (the 'MS Stockholder Group') was formed among Morgan Stanley, Gemini, and the MS Subsidiaries with respect to [Gramercy's] common stock within the meaning of Section 13(d) of the [Exchange] Act."  (Id. ¶ 18)  "By virtue of its participation in the MS Stockholders Group, each of Morgan Stanley, Gemini, and the MS Subsidiaries was deemed at all relevant times to have beneficially owned all shares of [Gramercy's] common stock owned by any member of the MS Stockholder Group."  (Id. ¶ 19)

On November 2, 2007, pursuant to a Subscription Agreement entered into by Gemini, Gramercy, and "certain affiliates of Morgan Stanley," Gemini acquired 3,809,524 shares of Gramercy's common stock.  (Id. ¶ 20)  These shares constituted approximately 11% of the outstanding shares of Gramercy's common stock.  (Id. ¶ 21)

In connection with its investment in Gramercy, Gemini entered into certain agreements with SL Green Operating Partnership, L.P. ("SLG"), a Delaware limited partnership under the indirect control of Stephen L. Green, Chairman of Gramercy's Board of Directors.  (Id.

¶ 7, 22)  The agreements between Gemini and SLG included a Stockholders Agreement and a Registration Rights Agreement, both dated November 2, 2007.  (Id. ¶ 22; Exs. A, B)  "At all relevant times, SLG has beneficially owned in excess of 10% of the outstanding shares of [Gramercy's] common stock."  (Id. ¶ 7)

       In the Stockholders Agreement, "Gemini and SLG agreed to act together in holding and disposing of shares" of Gramercy's common stock.  (Id. ¶ 23)  The Complaint further alleges that Gemini and SLG agreed "to allow an employee of Morgan Stanley or its subsidiaries to join meetings of [Gramercy's] Board of Directors as Gemini's non-voting representative," and that "Morgan Stanley and the MS Subsidiaries were also entitled to claim many of Gemini's rights under the Stockholder's Agreement in their capacity as 'Permitted Transferees.'"  (Id. ¶ 23)  Chechele further alleges that in the Registration Rights Agreement, "Gemini and SLG agreed to act together in holding and disposing of shares" of Gramercy's common stock (id. ¶ 24), and that "Morgan Stanley and the MS Subsidiaries were also entitled to claim many of Gemini's rights under the Registration Rights Agreement in their capacity as 'Permitted Transferees. . . .'"  (Id.)

       The Complaint also alleges that "Gemini's arrangement with SLG and [Gramercy] included an understanding that Gemini's affiliates, including other members of the MS Stockholder Group, would have access to confidential information about [Gramercy] not available to the public generally."  (Id. ¶ 25; Ex. A at 11)  "As a result of the[se] arrangements, understandings, and agreements . . . SLG was deemed part of the MS Stockholder Group for purposes of Section 13(d) of the [Exchange] Act."  (Id. ¶ 27)  "By virtue of SLG's participation in the MS Stockholder Group, each member of the MS Stockholder Group was deemed at all

relevant times to have beneficially owned, in addition to its other holdings of [Gramercy's] common stock, all shares of [Gramercy's] common stock owned by SLG." (Id. ¶ 28)

Chechele alleges that following the formation of the MS Stockholder Group, and the execution of the Stockholders Agreement and the Registration Rights Agreement, Morgan Stanley and the MS Subsidiaries realized substantial profits from short-swing transactions in shares of Gramercy's common stock. (Id. ¶ 30) These short-swing transactions – which took place between January 2, 2007 and May 27, 2009 – occurred at a time "when Morgan Stanley and each MS Subsidiary beneficially owned in excess of 10% of the outstanding shares of [Gramercy's] common stock and enjoyed unique access to material nonpublic information about [Gramercy] as a result of Morgan Stanley and Gemini's relationship with SLG and [Gramercy]." (Id. ¶¶ 31, 34-35, Ex. C)

Chechele filed the Complaint in this action on June 14, 2011. (Dkt. No. 1) The Complaint's First Claim for Relief asserts that Morgan Stanley and the MS Subsidiaries realized recoverable profits as a result of short-swing transactions set forth in Exhibit C to the Complaint. (Id. ¶¶ 37-38) The Complaint's Second Claim for Relief asserts that Morgan Stanley and the MS Subsidiaries may have engaged in other short-swing transactions, but that such "purchases and sales . . . cannot be identified by Plaintiff with specificity because they have not been publicly reported." (Id. ¶¶ 40-42) The MS Defendants have now moved to dismiss the Complaint. (Dkt. No. 11)

## DISCUSSION

### I.   LEGAL STANDARD

"To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," <u>Kassner v. 2nd Ave. Delicatessen Inc.</u>, 496 F.3d 229, 237 (2d Cir. 2007) (citing <u>Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." <u>Id.</u> (citing <u>Fernandez v. Chertoff</u>, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled if it merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555), or if it does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.</u>, 507 F.3d 117, 121 (2d Cir. 2007) (citing <u>Twombly</u>, 550 U.S. at 555).

In ruling on a Rule 12(b)(6) motion to dismiss, a court may consider "the factual allegations in [the] . . . complaint, . . . documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, [and] documents either in plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit." <u>Brass v. Am. Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993). Furthermore, a district court "may take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." <u>Kramer v. Time Warner, Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991) (citation omitted).

II.     **ANALYSIS**

     A.      **The Complaint's First Claim is Barred by the Statute of Limitations**

          1.      **Effect of Credit Suisse Securities (USA) LLC v. Simmonds**

        The MS Defendants argue that Chechele's claims are time-barred under Section 16(b) of the Exchange Act, because the Complaint does not allege any short-swing trades that occurred during the two-year period prior to the filing of the Complaint on June 14, 2011.  (Def. Br. at 20)  At the time the Complaint was filed, Second Circuit law provided that "the two-year limitations period of Section 16(b) is subject to equitable tolling when a covered party fails to comply with Section 16(a) and that such tolling ends when a potential claimant otherwise receives sufficient notice that short-swing profits were realized by the party covered by Section 16(a)."  Litzler v. CC Invs., L.D.C., 362 F.3d 203, 205 (2d Cir. 2004).  The Complaint alleges that the statute of limitations was equitably tolled here, "[b]ecause certain of the [short-swing] transactions [listed in the Complaint] were not properly reported under Section 16(a) of the [Exchange Act]."  (Cmplt. ¶ 12)

        The United States Supreme Court's March 26, 2012 opinion in Credit Suisse Securities (USA) LLC v. Simmonds, 132 S.Ct. 1414 (2012) abrogates Litzler, however.  In Simmonds, the Supreme Court explicitly

> reject[ed] the Second Circuit's rule that the 2-year period is tolled until the plaintiff "gets actual notice that a person subject to Section 16(a) has realized specific short-swing profits that are worth pursuing."  Litzler v. CC Investments, L.D.C., 362 F.3d 203, 208 (2004).

Simmonds, 132 S.Ct. at 1421, n. 7.

        The Supreme Court explained that – "[e]ven accepting that equitable tolling for fraudulent concealment is triggered by the failure to file a § 16(a) statement" – "long-settled equitable-tolling principles" apply to Section 16(b) cases.  Id. at 1419-20.  The Supreme Court

then cited the "well established" rule "that when a limitations period is tolled because of fraudulent concealment of facts, the tolling ceases when those facts are, or should have been, discovered by the plaintiff." Id. at 1420. "Allowing tolling to continue beyond the point at which a § 16(b) plaintiff is aware, or should have been aware, of the facts underlying the claim would quite certainly be inequitable and inconsistent with the general purpose of statutes of limitations: 'to protect defendants against stale or unduly delayed claims.'" Id. (emphasis in original) (citing John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133 (2008)).[2]

### 2.   Application of Equitable Tolling Rules

In letter briefing submitted post-Simmonds, the MS Defendants argue that Chechele "should have been aware" of the facts underlying her Section 16(b) claim "long before she filed her complaint in June 2011." (Def. Apr. 3, 2012 Ltr.) Chechele counters that equitable tolling "involves fact-intensive disputes," Simmonds, 132 S.Ct. at 1421, which "can only be resolved after discovery." (Pltf. Apr. 10, 2012 Ltr.) Because the Complaint does not plead any facts making it plausible to believe that equitable tolling could apply here, the Complaint's first cause of action is time-barred.

The Second Circuit has set a stringent standard for the application of equitable tolling:

> Although we have broadly stated . . . that we will apply the equitable tolling doctrine "as a matter of fairness" where a plaintiff has been "prevented in some extraordinary way from exercising his rights," Miller v. International Telephone & Telegraph Corp., 755 F.2d 20, 24 (2d Cir.1985), we made it clear that we had in mind a situation where a plaintiff "could show that it would have been impossible for a reasonably prudent person to learn" about his or her cause of action. Id. (emphasis added); see Johnson v. Nyack Hospital, 86 F.3d 8, 12 (2d Cir.1996).

---

[2] The Court divided four to four on the issue of whether "§ 16(b) establishes a period of repose that is not subject to tolling." Accordingly, the Court affirmed without precedential effect the Ninth Circuit's conclusion that equitable tolling applies to Section 16(b). Simmonds, 132 S.Ct. at 1421.

9

Pearl v. City of Long Beach, 296 F.3d 76, 85 (2d Cir. 2002).  The Second Circuit has further stated that "[b]ecause statutes of limitations 'protect important social interests in certainty, accuracy, and repose,' Cada v. Baxter Healthcare Corp., 920 F.2d 446, 453 (7th Cir. 1990), equitable tolling is considered a drastic remedy applicable only in 'rare and exceptional circumstance[s],' Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (internal quotation marks and alteration omitted)."  A.Q.C. ex rel. Castillo v. U.S., 656 F.3d 135, 144 (2d Cir. 2011). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).  The Complaint does not plead facts suggesting that Plaintiff can satisfy either element.

The Complaint relies on information set forth in a Schedule 13D – and in the Stockholders and Registration Rights Agreements attached as exhibits to the Schedule 13D – publicly filed by Gramercy on November 13, 2007, more than three and a half years before Plaintiff filed her June 2011 complaint.  Plaintiff claims that the Stockholders and Registration Rights Agreements attached as exhibits to the Schedule 13D reveal, inter alia, that the MS Defendants, Gemini, and SLG formed a "group" under Section 13(d) of the Exchange Act. (Cmplt. ¶¶ 22-27; Youngwood Decl., Exs. A at 12-14, Ex. B)  The Complaint further alleges that the first short-swing transaction engaged in by the MS Defendants took place on January 2, 2007, and the last short-swing transaction occurred on May 27, 2009  (Cmplt., ¶¶ 34-35, Ex. C) – more than two years before the filing of the June 14, 2011 Complaint.  (Dkt. 1)  Moreover, Chechele is represented by attorneys well-versed in the requirements for a Section 16(b) cause of

action; indeed, those attorneys have filed at least fifteen Section 16(b) cases on behalf of Chechele alone.[3]

   The Second Circuit has rejected equitable tolling arguments under similar circumstances, where information necessary for pleading was available on public databases and where a plaintiff was represented by highly experienced counsel.  See, e.g., A.Q.C. ex rel. Castillo v. U.S., 656 F.3d 135, 146 (2d Cir. 2011).

   In sum, the Complaint demonstrates that Chechele knew, or reasonably should have known, the facts necessary to plead her Section 16(b) claim more than two years before she filed her June 2011 Complaint.  Under these circumstances, Chechele has not demonstrated that she "pursu[ed] [her] rights diligently."  She has likewise not shown "that some extraordinary circumstance stood in [her] way."  Pace, 544 U.S. at 418.  As the Supreme Court stated in Simmonds, "[a]llowing tolling to continue beyond the point at which a § 16(b) plaintiff is aware, or should have been aware, of the facts underlying the claim would quite certainly be inequitable and inconsistent with the general purpose of statutes of limitations. . . ."  Simmonds, 132 S.Ct. at

---

[3]  Chechele v. Germain, No. 11-CV-7724 (S.D.N.Y. filed Oct. 31, 2011); Chechele v. Cumming, No. 11-CV-7227 (S.D.N.Y. filed Oct. 13, 2011); Chechele v. Scheetz, No. 10-CV-7992, 2011 WL 3837125 (S.D.N.Y. Aug. 30, 2011), appeal docketed, No. 11-3889 (2d Cir. Sept. 26, 2011); Chechele v. Shields, No. 11-CV-4993 (S.D.N.Y. filed July 20, 2011); Chechele v. Sperling, No. 11-CV-0146 (S.D.N.Y. filed Jan. 7, 2011); Chechele v. Hayne, No. 2:11-0379, 2011 WL 2519522 (E.D. Pa. June 20, 2011); Chechele v. Prolar Biotech, Inc., No. 11-CV-3426 (S.D.N.Y. filed May 19, 2011); Chechele v. Elsztain, No. 11-CV-3320 (S.D.N.Y. filed May 16, 2011); Chechele v. Ganning, No. 11-CV-2853 (S.D.N.Y. filed Apr. 27, 2011); Chechele v. Phoenix Venture Fund, LLC, No. 11-CV-2729 (S.D.N.Y. filed Apr. 21, 2011); Chechele v. Ward, No. CIV-10-1286-M, 2011 WL 1405244 (W.D. Okla. Apr. 13, 2011); Chechele v. VICIS Capital, L.L.C., No. 11-CV-2191 (S.D.N.Y. filed Mar. 30, 2011); Chechele v. Dialectic Cap. Mgmt., LLC., No. 11-CV-1913 (S.D.N.Y. filed Mar. 18, 2011); Davis, L.L.C. v. Recovery Energy, Inc., No. 11-CV-0471 (D. Colo. filed Feb. 25, 2011); Chechele v. Joffe, No. 10-CV-6747 (S.D.N.Y. filed Sept. 10, 2010).

1420 (emphasis in original).  Accordingly, Chechele's first claim for relief will be dismissed as time-barred.

**B.**     **Chechele's Second Claim for Relief Fails to State a Claim**

The Complaint's Second Claim for Relief asserts that the MS Defendants may have engaged in other short-swing transactions, but that such "purchases and sales . . . cannot be identified by Plaintiff with specificity because they have not been publicly reported."  (Cmplt. ¶¶ 40-42)  This claim presents mere speculation and "fails the most basic pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. . . ." Chechele v. Vicis Capital, LLC, No. 11 Civ. 2191(KBF), 2012 WL 310943, at *3 (S.D.N.Y. Jan. 31, 2012).  At least two other district courts have dismissed similarly worded claims filed by Chechele.  See Chechele v. Hayne, No. 2:11-00379, 2011 WL 2519522, at *4 (E.D. Pa. June 20, 2011) (holding that Chechele's second claim for relief for "additional short-swing trades" that she might discover "during the course of th[e] action" "fail[ed] to allege facts sufficient to 'raise a right to relief above the speculative level'" (citing Twombly, 550 U.S. at 555)); Vicis Capital, 2012 WL 310943, at *3.

As noted above, a complaint is inadequately pled if it does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Port Dock & Stone Corp., 507 F.3d at 121 (citing Twombly, 550 U.S. at 555).  Chechele's second claim – asserted as a "precaution" and in the event that the public record is incomplete – does not give the Defendants fair notice of the grounds upon which it rests and constitutes mere speculation.  Accordingly, Chechele's second claim for relief will be dismissed.

## **CONCLUSION**

The MS Defendants' motion to dismiss (Dkt. No. 11) is GRANTED.  The Clerk

of the Court is directed to terminate the motion.

Dated:  New York, New York
        September 26, 2012

                                        SO ORDERED.

                                        Paul G. Gardephe
                                        United States District Judge

13